Clark vs. The State.

CLARK, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 16 — June 22, 1887.*

CRIMINAL LAW: *What is a building within the statute against burglary.*

1. A structure in course of erection, and intended for a dwelling, which, though unfit for the purpose for which it is ultimately designed, and not occupied as a dwelling, is yet so far completed as to be used temporarily for the shelter or occupation of man or beast, or for the storage of tools or other personal property for safe-keeping, is a "building," within the meaning of sec. 4409, R. S., and the felonious breaking and entering the same in the night-time is burglary.

2. An information which charges the felonious and burglarious breaking and entry of such a building in the night-time, describing it as the "unfinished dwelling-house of one F. F.," with intent to steal certain tools therein, sustained, though F. F. was interested in the building only as contractor for its erection and completion.

ERROR to the Municipal Court of *Milwaukee* County. The facts are sufficiently stated in the opinion.

The cause was submitted for the plaintiff in error upon the brief of *Bradley G. Schley*, and for the defendant in error upon that of *L. K. Luse*, Assistant Attorney General.

For the plaintiff in error it was argued that the "unfinished dwelling-house," charged in the information to have been feloniously entered in this case, was but a hasty

skeleton of four days' growth, and not a " building," within sec. 4409, R. S., under which the conviction was had. That statute creates a new grade of burglary, and must be construed with the greatest strictness. *State v. Kane,* 63 Wis. 260. This structure was not completed, and therefore was not within either the common or the judicial definition of a building. *L. C. & M. R. Co. v. Vanderpool,* 11 Wis. 119; *Elsmore v. St. Briavells,* 8 B. & C. 461; *State v. McGowan,* 20 Conn. 245; *McGary v. People,* 45 N. Y. 153. If a building at all, it was not one of a similar character to those named in the statute. *Bevitt v. Crandall,* 19 Wis. 581; *Edson v. Hayden,* 20 id. 682; *State ex rel. Kennedy v. McGarry,* 21 id. 496; *Jensen v. State,* 60 id. 577; *Morse v. Buffalo F. & M. Ins. Co.* 30 id. 534. Nor was the tool-shed a " building;" or if so, it was not an " unfinished dwelling-house," and certainly was not the dwelling-house of the person named as owner.

For defendant in error it was argued that the term " building " does not necessarily import a finished structure. This one. had a capacity to contain, and did contain, the property stolen, and was a " building " within the object of sec. 4409, R. S. *Comm. v. Squire,* 1 Met. 258; *Reg. v. Manning,* L. R. 1 Cr. Cas. 338; *Rex v. Worrall,* 7 Car. & P. 516; *People v. Stickman,* 34 Cal. 242; *Barnett v. State,* 38 Ohio St. 7; Bishop on Statutory Crimes, § 292. The question whether it was a building was one for the jury, and was determined by them in the affirmative. It was the property of the contractor, until finished according to contract, and was properly described as his in the information. *Nicholls v. State,* 68 Wis. 416; *Orrell v. People,* 94 Ill. 456. The room in which the tools were stored was a part of the building and was actually broken.

Cole, C. J. The plaintiff in error was prosecuted and convicted of the crime of burglary. A motion in arrest of

judgment was made, principally upon the ground that burglary, neither at common law nor as defined by statute, was properly charged in the information. The information charges, in effect, that the plaintiff in error, on the 27th day of August, 1886, at Milwaukee county, "the unfinished dwelling-house of one Fred Frady, then and there in the custody and possession of said Fred Frady, and there situate, in the night of said day, then and there unlawfully, feloniously, and burglariously did break and enter, with intent then and there the tools, goods, chattels, and property of one Peter Oman and one Charles Gesch, then and there in said dwelling-house being found, then and there feloniously and burglariously to steal," etc. The information is under sec. 4409, R. S., which makes it burglary to break "and enter in the night-time any office, shop, or any other building not adjoining or occupied with any dwelling-house, or any ship, steamboat, vessel, railroad freight car or passenger car, with intent to commit the crime of larceny or other felony." Our statute defines or describes several grades of burglary, and makes that offense burglary which was not so at common law. *State v. Kane*, 63 Wis. 260. It appears that the building broken into in this case was erected upon a stone foundation, was intended for a dwelling-house, and was in process of construction. The walls or sides were up, and the roof was on. The windows and doors had not been put in, though some of the windows were boarded up. A temporary room had been partitioned off in the basement; the basement walls forming two sides, the other sides being closed up with boards, with a door which was locked with a padlock. This room was intended for storing the tools of the workmen while at work on the building. The outside window of the basement was covered with boards. A temporary floor had been laid, from which the basement was reached by means of a ladder. There was a chest of tools on this temporary floor, and also tools in

the small room below. The evidence showed that the boards on the basement window were torn off, and the door on the small room in the basement, which was left locked, was broken open, and carpenters' tools were taken from this room, and from the chest which was on the floor above. It also appeared that Frady was a contractor who had entered into a contract to erect and complete the building for a specified sum, and was in possession and control of the same.

Now, the contention of the learned counsel for the plaintiff in error is that breaking and entering a structure in the process of construction, as the building in question was described to be, is not included within the statute. It will be observed the provision quoted makes the breaking and entry in the night-time of " any office, shop, warehouse, *or other building not adjoining or occupied with any dwelling-house*," with intent, etc., one grade of burglary. But it is said a structure which is unfinished, unfit for occupation for the purpose for which it was designed, is not a *building*, within the meaning of the statute. But, on considering the objects of the statute, we are fully satisfied that the word "building," as used therein, does not necessarily mean a structure so far completed as to be in all respects fit for the purpose for which it was intended. It doubtless does mean an edifice or structure erected upon land, and so far completed that it may be used temporarily or permanently for the occupation or shelter of man or beast, or for the storage of tools or other personal property for safe-keeping. Webster defines the word " building " as "a fabric or edifice constructed; a thing built." Worcester defines it, "a structure or edifice;" the Imperial Dictionary, "a fabric or edifice constructed for use or convenience, as a house, church, shop." In *La Crosse & M. R. Co. v. Vanderpool*, 11 Wis. 121, Mr. Justice PAINE says: "The well-understood meaning of the word is a structure which has a capacity to contain, and is

designed for the habitation of man or animals, or the sheltering of property." In this case the structure was intended for use and occupation as a residence when completed. Now, to hold that it was not a building — does not satisfy the definition of the statute, because it is unfinished, not perfect for the purpose for which it was designed eventually to be used — would be giving the statute a stricter construction than we are disposed to place upon it. We are rather inclined to hold that the legislature intended to include in the term "building" a dwelling-house not completed, but in the condition in which the one in question was, and in which tools or other articles of personal property were or might be temporarily stored or left for safe-keeping. The language is broad enough to include such an edifice, and we think does include it.

But counsel refers, in support of his construction of the statute, to the cases of *Elsmore v. St. Briavells*, 8 Barn. & C. 461; *State v. McGowan*, 20 Conn. 245; *McGary v. People*, 45 N. Y. 153. *Elsmore v. St. Briavells* was an action against the hundred to recover satisfaction for damages sustained for setting fire to a building intended for and constructed as a dwelling-house, but which had not been completed or inhabited, and in which the owner had deposited straw and agricultural implements. The act gave the action against the hundred where the fire consumed a house, barn, or out-house. It was held the building in that case was not a dwelling-house, though it was intended for one; nor was it an outhouse or barn, within the meaning of the statute, so as to entitle the owner to maintain the action against the hundred. BAYLEY, J., says: "The hundred are liable to make satisfaction to the party injured by the burning of a house, outhouse, or barn, provided a capital offense be committed against that statute by such burning. This building was not a barn, within the meaning of that word as used in the statute; though the house had been applied to the pur-

poses which a barn might be used for." *State v. McGowan* was an information charging the defendant with burning a dwelling-house, and it appeared that the building burned was designed and built for a dwelling-house, but was not completed, ready for the habitation of man. The court held the crime of arson meant the common-law offense, which was defined to be the wilful and malicious burning of a dwelling-house which was completed and inhabited, or at least ready for occupation in the condition in which it was. *McGary v. People* was an indictment under the statute for setting fire to an unfinished building. The indictment was under a statute making it a felony to set fire to or burn any building erected for the manufacture of cotton or woolen goods, or both. The court held that the statute applied to a completed building, and not one in process of construction or erection.

These cases furnish but little aid in the construction of our own statutes, for it is obvious, as Mr. Bishop remarks, that the word " building," in a statute, will almost always depend for its meaning, in some degree, on the particular subject, and its connection with other words. St. Crimes, § 292. And while, as the assistant attorney general suggests, it may be difficult to say at what time a structure in process of construction presents such a degree or state of completion as that it may be described as a building in the sense of the statute, still we think the edifice in question may be properly denominated a building, within the meaning of sec. 4409. In the connection in which the word is used it cannot import a finished structure ready for use, as a residence, for the words are, " any other building not adjoining or occupied with a dwelling-house." The other building was a structure different from a dwelling-house, as those words were used in this and the two preceding sec tions. We think the provision was intended to include any building not within the curtilage, in which property might

be stored, or men or animals sheltered.   There are cases which show that the word is often used in statutes in that sense.   In *Rex v. Worrall*, 7 Car. & P. 516, an unfinished building intended as a cart-shed, which was boarded up on all its sides, had a door with a lock to it, and the frame of a roof, with loose gorse thrown upon it, but not thatched, was held a building.   In *Queen v. Manning*, L. R. 1 Cr. Cas. 338, an unfinished house of which the walls were built and finished, and the roof on and finished, considerable part of the flooring laid, and the internal walls and ceilings prepared ready for plastering, was held to be a building.   This shows that a building, as the word is often used, does not necessarily imply a completed structure.   In *Barnett v. State*, 38 Ohio St. 7, a defendant was indicted for the burglary of a barn.   The proof showed that the building which had been broken and entered was erected by the owner on his farm for a dwelling-house, but had never been occupied or used as such; that the owner had for several years, and ever since its erection, used it to store wheat after it was threshed, and corn after it was husked, such grain being the products of the farm on which the building was erected; and the court held the building a barn within the meaning of the statute.   In *People v. Stickman*, 34 Cal. 242, the defendant was indicted for burglary for breaking and entering a chicken-house in the night-time, with the intent to steal the domestic fowls there being.   An objection was taken that to constitute burglary there must be a breaking and entering into a house, room, or tenement where some person dwells or lives.   But the court decided that the language, "any dwelling-house, or any other house whatever, or tent, or vessel, or other water-craft," was broad enough to include buildings of any kind, and used for any purpose, and sustained the conviction.

In *Orrell v. People*, 94 Ill. 456, in an indictment for break-

ing and entering a stable, the objection was taken that it should have been averred that the defendant broke and entered a building. But the court said that the word "stable," as the word was commonly used and understood, was equivalent to "building." In *Comm. v. Squire*, 1 Met. 258, the defendant was indicted for feloniously setting fire to a building erected for a dwelling-house, but not completed or inhabited. It was objected that the indictment was bad, and did not charge a crime, because the building described was not completed. The court say, in answer to the objection: "The ground of the objection is that a structure cannot be considered a building while it is yet incomplete and unfinished in any respect. Looking at the objects of the statute, and its provisions, we are fully satisfied that the term 'building,' as used in the statute, does not necessarily import a structure so far advanced as to be in every respect finished and perfect for the purpose for which it is designed eventually to be used. If this were so, then the burning of a structure designed for a dwelling-house, at any period before the last door was hung, would not be punishable. We cannot adopt a construction of the statute which would leave open so wide a door to escape from its penalties."

It is further claimed that, if the structure was a building, it did not belong to the class covered or intended to be covered by sec. 4409. We have already said that the section embraced an unfinished dwelling-house in the state the one in question was,— a structure which could or might be used for the habitation of man or animals, or in which personal property might be temporarily stored. This sufficiently disposes of this point. We cannot see that the maxim *noscitur a sociis* has any application to the case; for the language is broad enough to include any building of any kind which is not adjoining to or occupied with a dwelling-house, for.

whatever purpose it may be used, and in the condition this was.

There is abundant evidence to sustain the verdict. This disposes of all the material questions in the case.

*By the Court.*— The judgment of the municipal court is affirmed.