STATE of Missouri,
Plaintiff–Respondent,

v.

Anthony SPICUZZA,
Defendant–Appellant.

Anthony SPICUZZA, Movant,

v.

STATE of Missouri, Respondent.

Nos. 55085, 58002.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 26, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 8, 1991.

Application to Transfer Denied
May 3, 1991.

Beth A. Davis, Melinda K. Pendergraph, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This is a consolidated appeal. Defendant, Anthony L. Spicuzza, first appeals his conviction on Count VI, charging him with forgery. Defendant claims that the trial court clearly erred in allowing Lisa Chiodini to testify about statements made to her by another employee, John Kaemerrer. According to Chiodini's testimony, Kaemerrer told her that Spicuzza cashed a check from the Anthony Shirt Company payable to Letha Barnett in the amount of $489.00. Although defendant failed to specifically object to the testimony as hearsay at the time of trial, defendant claims that the admission of this evidence constituted plain error because such testimony denied defendant his right to confront the credibility of Kaemerrer. Secondly, defendant appeals the dismissal of his Rule 29.15[1] motion without an evidentiary hearing, on the grounds that defendant's *pro se* motion was not timely filed. We affirm the conviction and reverse and remand for further proceedings under Rule 29.15.

The facts may be briefly stated as defendant does not challenge the sufficiency of the evidence. On July 13, 1987, defendant, Anthony Spicuzza, was charged by indictment in nine separate counts.[2] On defendant's motion, counts I through VI were severed from counts VII through IX and the first six counts were jury tried on May 10, 1988, in the Circuit Court of the City of St. Louis.

The evidence at trial as viewed in the light most favorable to the state showed that: as to count I, on February 21, 1986,

---

1. All references to rules are to Missouri Rules of Court, 1990, unless otherwise noted.

2. The nine counts were as follows: Counts I, II and III were for stealing over $150 by deceit, § 570.030 RSMo 1986, class C felonies; count IV was for stealing under $150 by deceit, § 570.030 RSMo 1986, a class A misdemeanor; count V was for forgery by making or altering a writing, § 570.090 RSMo 1986, a class C felony; count VI was for forgery by uttering as genuine, § 570.090 RSMo 1986, Supp.1990, a class C felony; count VII was for passing a bad check due to insufficient funds, § 570.120 RSMo 1986, Supp.1990, a class A misdemeanor; and count IX was for passing a bad check with no account, § 570.120 RSMo 1986, Supp.1990, a class C felony.

in the City of St. Louis, defendant entered into a contract to repair the roof on the home of Lillie Mae Harris (hereinafter Harris). Defendant was given $200.00 by Harris but never began the roof work.

Count II involved defendant entering into a contract with Mattie Dixon (hereinafter Dixon) on March 29, 1986, to repair the guttering and downspouts on Dixon's house in the City of St. Louis. Defendant received a check from Dixon in the amount of $150.00 but he never completed any work.

Count III involved defendant entering into a contract on March 24, 1986, to repair the chimney and sidewalk at the home of Annie Daugherty (hereinafter Daugherty) in the City of St. Louis. Defendant received a check in the amount of $200.00 and a watch with an agreed value of $60.00 from Daugherty, but defendant did not complete the repairs.

Count IV stemmed from a contract defendant entered into on April 10, 1986, with Gertis Farmer (hereinafter Farmer), to repair the electric wiring in her home. Defendant received a check in the amount of $60.00 from Farmer but defendant never completed the repairs.

Count V involved a contract defendant entered into on December 18, 1986, with Letha Barnett (hereinafter Barnett) to carpet her apartment in the City of St. Louis. Defendant received a check in the amount of $150.00 and a subsequent check for another $50.00, but defendant never completed the repairs. Defendant altered the check for $50.00 and raised the amount to $1,150.00 without the permission of Barnett.

Count VI involved defendant cashing on February 26, 1987, a check made payable to Letha Barnett. This check in the amount of $489.00 from the Anthony Shirt Company, was handled by John Kaemerrer (hereinafter Kaemerrer), a teller at the Southwest Bank, in the City of St. Louis. Barnett never endorsed the back of the $489.00 check.

On May 13, 1988, the jury convicted Spicuzza of all six of the counts for which he was tried and he was sentenced to five concurrent terms of fifteen years imprisonment and one concurrent term of one year imprisonment.

### Direct Appeal

■ Defendant only appeals his conviction on Count VI, charging him with forgery. This appeal does not affect finality of concurrent fifteen year sentences on counts I, II, III and V. A ruling in favor of defendant on his single claim of error which affects only count VI is unnecessary under the concurrent sentence doctrine. The doctrine was applied by the Western District of this court in *State v. Supinski*, 779 S.W.2d 258, 264–265 (Mo.App.1989) and *State v. Davis*, 624 S.W.2d 72, 77 (Mo.App. 1981). Application of that doctrine permits an appellate court to decline to review a claim of error in a multi-count conviction providing a ruling in defendant's favor as to a challenged count would not reduce the penalty imposed because of the concurrent sentences on the remaining counts. Application of the doctrine has been held to be optional. *State v. Harper*, 778 S.W.2d 836, 838 (Mo.App.1989). *Harper* also expressed the view that it is preferable to dispose of issues on their merits. However, application of the doctrine is warranted in the present case with the following considerations.

■ First, the direct appeal does not claim error which would require a reversal of the conviction on the challenged count. Defendant seeks a new trial. He complains some hearsay evidence was admitted. However, he concedes the evidence was admitted without objection and requests plain error review.

Second, the unchallenged convictions and fifteen year concurrent sentences on counts I–III and V charged crimes similar to count VI.

Third, defendant was charged as a prior and persistent offender. The indictment charged eight prior felony convictions for crimes similar to the crime charged in count VI. In each of the pleaded prior convictions, defendant entered a plea of

guilty. Four of the prior convictions involved forgery as an element of the crime.

Fourth, the only claim of error to support a request for new trial is without merit. Accordingly, application of the concurrent sentence doctrine in the present case will reach the same result as a decision on the merits.

Point denied.

### Post–Conviction Proceeding

In his second point, defendant alleges that the motion court erred in dismissing his *pro se* motion without an evidentiary hearing. The motion court dismissed defendant's Rule 29.15 motion because it found that the motion was not timely filed.

The relevant provisions of Rule 29.15 for determining the timeliness of such a post-conviction motion are: *"[i]f an appeal of the judgment* sought to be vacated, set aside or corrected *was taken,* the *motion shall be filed within thirty days after the filing of the transcript in the appeal* pursuant to Rule 30.04." Rule 29.15(b). (Emphasis added). The Missouri Supreme Court has upheld the constitutionality of the time requirements contained in Rule 29.15 and has further found them to be mandatory in the rule's application. *Day v. State,* 770 S.W.2d 692 (Mo. banc 1989).

Defendant filed the trial transcript for his appeal on June 7, 1989, making July 7, 1989, the final day upon which defendant could have timely filed his *pro se* post-conviction relief motion. The motion court appears to have based its dismissal of defendant's motion on a docket entry in the court's file which acknowledged July 12, 1989, as the date on which defendant filed his Rule 29.15 motion. The court appears to have disregarded the actual *pro se* Rule 29.15 motion that defendant filed, which had a July 7, 1989, circuit court clerk's file stamp on it. The legal file reveals a letter

from the circuit court clerk's office dated July 12, 1989, acknowledging receipt of defendant's post-conviction relief motion as being filed on July 7, 1989.

■ We have held in the past that a post-conviction relief motion is deemed filed when it is lodged in the circuit clerk's office. *Harrell v. State,* 775 S.W.2d 228, 229 (Mo.App.1989). From the evidence we believe that his 29.15 motion was received by the circuit clerk's office on July 7, 1989, *and* that the court's docket entry acknowledging receipt of the motion as of July 12, 1989, was in error.

We remand with instructions to review defendant's motion [3] to determine whether he has alleged facts to warrant a hearing.

KAROHL, J., concurs.

GRIMM, J., concurs in part and dissents in part in separate opinion.

GRIMM, Judge, concurring in part and dissenting in part.

I concur in the result reached by the majority opinion. I respectfully dissent, however, to the extent the opinion appears to adopt and arguably applies a "concurrent sentence doctrine."

As the majority opinion states, application of the doctrine "permits an appellate court to decline to review a claim of error in a multi-count conviction providing a ruling in defendant's favor as to a challenged count would not reduce the *penalty* imposed because of the concurrent sentences on the remaining counts." *State v. Spicuzza,* 806 S.W.2d 719, 721 (Mo.App.E.D.1991) (emphasis added).

The cases from jurisdictions which have adopted the doctrine do not provide "any satisfactory explanation for the concurrent sentence doctrine." *Benton v. Maryland,* 395 U.S. 784, 789, 89 S.Ct. 2056, 2060, 23

---

**3.** Respondent claims that even if defendant's *pro se* post-conviction relief motion was timely filed, it would still warrant dismissal because the motion merely states conclusions and not facts. We find no merit in this point. We acknowledge that in order to receive an evidentiary hearing a post-conviction motion must allege facts rather than conclusions. *Cammann*

*v. State,* 785 S.W.2d 763, 764 (Mo.App.1990). But we also recognize that a movant should be afforded an opportunity to *fully* present his claims and Rule 29.15 furthers this goal by allowing for the appointment of counsel and the opportunity to file an amended motion. Rule 29.15(e), (f).

L.Ed.2d 707, 713 (1969). The "doctrine is only a rule of judicial convenience" for reasons of judicial economy. *U.S. v. De-Bright*, 730 F.2d 1255, 1258 (9th Cir.1984).

This doctrine is contrary to Missouri law. "Every person who has been found guilty of a crime is entitled to appeal and have all contentions of error which are properly preserved for appellate review to be considered and ruled." *State v. Jones*, 365 S.W.2d 508, 513 (Mo.1963).

Further, the *penalty* is not what is appealed, or what we are to review. Rather, it is the adverse judgment and sentence. Rules 30.01(a) and 30.06(b) and (d); § 547.070, RSMo 1986. Utilization of the doctrine impinges on a defendant's statutory right of appeal.

Criminal judgments and sentences involve more than just the penalty imposed. In declining to invoke the doctrine, our supreme court noted there are adverse collateral legal consequences of a conviction, including the "use of all prior felony convictions for the purpose of enhancing sentence under habitual criminal statutes and for the purpose of impeaching his character if put in issue in a future trial." *State v. Morgan*, 592 S.W.2d 796, 804 (Mo. banc 1980).

The number, and type of prior convictions, for the enhancement of sentences in Missouri has changed substantially in recent years. Before The Criminal Code became effective January 1, 1979, punishment for second and subsequent offenses was governed by § 556.280, RSMo 1969. Such an offender, whether with one or fifteen prior felony convictions, lost only the right to have the jury assess and declare the punishment. In other words, the trial judge determined and assessed punishment. Punishment could not be enhanced because the same range of punishment was applicable, regardless of the number of prior convictions.

With the adoption of The Criminal Code, this changed. Two new types of offenders were established, persistent and danger-ous. To be a "persistent offender," a defendant must have two prior felony convictions. To be a "dangerous offender," a defendant must have a prior conviction of a class A or B felony or of a dangerous felony, plus the defendant must face sentencing for a felony during which he murdered or endangered or threatened the life of another, or attempted or threatened to inflict serious physical injury. § 558.016, RSMo 1978. If defendant is found to be either a persistent or dangerous offender, the court, rather than the jury, assesses punishment, and the permissible maximum terms of imprisonment are increased.

In 1980, the effect of a prior conviction for rape or sodomy, or attempted rape or sodomy, was changed. Section 558.018, RSMo 1986 provides for a minimum thirty year sentence when a defendant has a previous conviction of one of those offenses, and is convicted of a similar offense.

Then, in 1986, § 558.019, RSMo 1986 was adopted, creating a new category of prior, persistent, and "class X" offenders. Under this statute, three prior felonies places a defendant in a "class X" category, requiring a defendant to serve a minimum of eighty percent of the sentence received.

These changes, all of which have occurred in the last fifteen years, show the collateral effect of felony[*] convictions changes from time to time. As a practical matter, it is impossible to foretell future adverse collateral legal consequences for a defendant. Consequently, the risk of our lack of omniscience falls on a defendant who will, without present or future review, suffer from the mistake. *DeBright*, 730 F.2d at 1258.

Nor can it be said that no other penalty attaches to a defendant by virtue of having multiple, concurrent sentences. The number of convictions might have a detrimental impact on a defendant's parole opportunity.

Defendant is entitled to have all of his contentions of error which are properly preserved "considered and ruled." *Jones*,

---

[*] The General Assembly has recently established a "persistent misdemeanor offender." Section 558.016.5, RSMo Cum Supp 1990.

365 S.W.2d at 513. The concurrent sentence doctrine should not be adopted or applied.