No. 95,592

STATE OF KANSAS, *Appellee*, v. DONALD D. STOREY, *Appellant*.

(179 P.3d 1137)

Opinion filed April 4, 2008.

*Matthew J. Edge,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Boyd K. Isherwood,* assistant district attorney, argued the cause, and *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: Donald Storey was convicted at a bench trial of burglary and theft for entering an unfinished medical center and taking a band saw. On appeal, Storey primarily argued that taking property from a structure under construction did not constitute burglary under K.S.A. 21-3715(b). A majority of the Court of Appeals

panel affirmed his convictions and sentences. *State v. Storey,* 37 Kan. App. 2d 555, 154 P.3d 1148 (2007). We granted Storey's petition for review; our jurisdiction is under K.S.A. 20-3018(b).

The issues on appeal, and this court's accompanying holdings, are as follows:

1. Did Storey's entry into the unfinished medical center with intent to commit a theft constitute burglary as a matter of law? Yes.

2. Did the district court violate the Sixth and Fourteenth Amendments by imposing an enhanced sentence based upon prior convictions, without requiring that they be proven to a jury beyond a reasonable doubt? No.

Accordingly, we affirm the district court and the Court of Appeals.

## FACTS

On the night of May 15, 2005, Storey entered the Wesley Medical Center construction site in Wichita. The structure under construction was approximately 70% complete. Specifically, it had a roof, a concrete floor, installed electrical work, and four brick walls with openings for yet-to-be-installed windows and doors. Storey entered the unfinished structure, cut the lock on a "job box" inside, and removed a band saw. The police stopped him after he put the saw in his car trunk. Storey was charged with burglary of a non-dwelling in violation of K.S.A. 21-3715(b) and with misdemeanor theft in violation of K.S.A. 21-3701.

Storey agreed to a bench trial on stipulated facts. The issue at trial was whether an unfinished medical center was covered by the burglary statute, K.S.A. 21-3715. Storey argued that he could not be convicted of burglary because no barriers existed to prevent him from entering. The district court determined that was not a critical factor, noting the "four brick walls, and a roof, but no doors or windows." The court construed the statute as including unfinished medical centers, found Storey guilty, and entered convictions on both counts.

The presentence investigation indicated that Storey had a criminal history score of "F" based upon various prior convictions. These convictions were not included in the complaint, nor were they part of the stipulated facts at the bench trial. Given Storey's

criminal history score, the district court sentenced him to probation with an underlying sentence of 17 months for the primary offense of burglary and a concurrent sentence of 6 months for the theft.

Before the Court of Appeals, Storey argued that his entry into an unfinished and unsecured building is not burglary as proscribed by K.S.A. 21-3715(b) and, therefore, insufficient evidence existed to support that conviction. The Court of Appeals concluded that based upon a plain reading of the statute, general legal authorities, and case law from other states, the medical center qualified as a building. Consequently, the court concluded that sufficient evidence supported Storey's conviction. *Storey*, 37 Kan. App. 2d 555.

Storey also argued that the use of his criminal history, without putting the prior convictions to a jury and proving them beyond a reasonable doubt, increased the maximum possible penalty for his conviction in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Citing *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), and its progeny, the Court of Appeals rejected this claim. We granted Storey's petition for review on these two issues.

Additional facts will be provided as necessary to the analysis.

## ANALYSIS

Issue 1: *Storey's entry into the unfinished medical center with intent to commit a theft constituted burglary as a matter of law.*

Consistent with his position at the Court of Appeals, Storey contends that his entry into an unfinished, unsecured building with intent to commit a theft does not constitute a burglary under K.S.A. 21-3715(b) and, therefore, there was insufficient evidence to convict him of that offense.

He recites our typical standard of review:

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Kesselring*, 279 Kan. 671, 679, 112 P.3d 175 (2005).

We believe that Storey's argument more accurately depends upon interpretation of the burglary statute, a question of law over

which we have unlimited review. See *State v. White,* 279 Kan. 326, 332, 109 P.3d 1199 (2005).

The burglary statute, K.S.A. 21-3715, provides in relevant part as follows:

"Burglary is knowingly and without authority entering into or remaining within any:

"(a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;

"(b) *building,* manufactured home, mobile home, tent or other structure *which is not a dwelling,* with intent to commit a felony, theft or sexual battery therein." (Emphasis added.)

"Dwelling," as mentioned in subsection (a), is defined in K.S.A. 21-3110(7) as "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." Burglarizing a dwelling under K.S.A. 21-3715(a) is a level 7 person felony. By contrast, burglarizing a nondwelling under subsection (b) is a level 7 *non*person felony. K.S.A. 21-3715.

Storey primarily argues that to qualify as a "building," a structure must be an enclosed space and have physical barriers to entry. He further argues that the classification of a structure under the burglary statute depends upon its condition at the time of the alleged crime. In support, Storey relies upon *State v. Moler,* 269 Kan. 362, 2 P.3d 773 (2000); *State v. Vinyard,* 32 Kan. App. 2d 39, 78 P.3d 1196 (2003), and *State v. Alvis,* 30 Kan. App. 2d 889, 53 P.3d 1232 (2002).

In *Moler,* this court determined that a lean-to did not qualify as an "other structure" under K.S.A. 21-3715(b). As Storey points out, in so holding the court stated that the enumerated items in the burglary statute are

"intended to present a barrier to entry, which in turn provide an enclosed space for the security of persons or property which may be contained therein. The lean-to herein is permanently and entirely open on one side. Its purpose was, apparently, to protect or shield vehicles from weather. *It was not designed for, or intended to, exclude entry of persons from its area, nor was it capable of being so utilized.* When strictly construed, 'other structure' does not include this lean-to." (Emphasis added.) 269 Kan. at 369.

By contrast, we conclude that the medical center obviously was "designed for" excluding entry, was "intended to" exclude entry, and once complete or nearly complete would be "capable of being so utilized." We observe that the language italicized above, while phrased negatively, is nevertheless consistent with authorities expressed in *Moler* for what positively constituted a building, *e.g.*: " 'A building *is* a structure that *has capacity for*, and *is designed for* the habitation of, man or animals, or the sheltering of property, *even though the building is unfinished.* . . .' 13 Am. Jur. 2d, Burglary § 6." (Emphasis added.) 269 Kan. at 365.

The Court of Appeals also found *Moler* unhelpful to Storey, further distinguishing it factually and legally from the instant case:

"The facts there are distinguishable, however, as well as the legal issue involved. In *Moler*, the court dealt with a lean-to that was entirely open on one side. *The edifice was completely constructed.* In that completed form it had only three walls, a dirt floor, and a roof. Also, the court there had to determine whether the lean-to was an 'other structure' as opposed to a building under subsection (b) of the burglary statute. Here, we have an edifice with four walls, a roof, a concrete floor, and completed electrical work with windows and doors yet to be installed. Here, we are concerned with whether the site of the intrusion was a building under the statute and not whether it was an other structure. *Moler* offers Storey no support." (Emphasis added.) 37 Kan. App. 2d at 559.

The Court of Appeals not only rejected Storey's physical "barrier to entry" and "enclosed space" arguments by distinguishing *Moler*, but also by examining the plain language of the burglary statute. Citing, *inter alia, State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006), it found no statutory basis for his arguments:

"[W]e find no support within the wording of the burglary statute for Storey's contention that a structure must present a barrier to entry or that it must provide an enclosed space for protection of persons or property located inside to qualify as a building under the statute. We do note the legislature defined a dwelling as 'a building or portion thereof, a tent, a vehicle or other *enclosed* space . . .' under K.S.A. 2006 Supp. 21-3110(7). (Emphasis added.) However, it did not similarly define a non-dwelling building. A plain reading then of our burglary statute suggests that a building need not have complete enclosure in order to qualify as a building under the statute.

"We note also that the legislature included the word 'any' before the term building. Significantly, this suggests that it intended that all types of buildings be included under the statute. K.S.A. 21-3715." 37 Kan. App. 2d at 558.

Consistent with the Court of Appeals' plain reading analysis, the State observes that the legislature eliminated the common-law requirement that a burglary involve a "breaking." See Judicial Council Comment, 1968, to K.S.A. 21-3716 (Weeks) ("The technical requirement of breaking in the former law was [a] historical anomaly and serves no useful purpose."). The State reasons that the removal of the breaking requirement from the entire statute, together with the lack of an enclosure requirement for subsection (b) nondwellings as recognized by the Court of Appeals, severely undercuts Storey's argument that only spaces protected by physical barrier or enclosed can be burglarized.

In addition to examining the plain statutory language and distinguishing *Moler*, the Court of Appeals also looked at general legal authorities for definitions of "building." It concluded that "[n]one of these definitions contain any reference to a barrier to entry or a requirement the structure be completely enclosed." 37 Kan. App. 2d at 558-59.

The Court of Appeals additionally looked to other jurisdictions, observing that all that have addressed the incomplete structure issue "have determined that such an unfinished structure is a building under their respective burglary statutes." 37 Kan. App. 2d at 560. The case law on the issue appears to begin with *Clark v. State*, 69 Wis. 203, 33 N.W. 436 (1887). There, the Wisconsin Supreme Court ruled that a house under construction that had a foundation, walls, sides, and a roof, but no windows or doors installed, constituted a building under Wisconsin's burglary statute. That statute provided in pertinent part that a burglary was to break "and enter . . . any office, shop, or any other building not adjoining or occupied with any dwelling-house . . . with intent to commit the crime of larceny or other felony." The *Clark* court held:

" 'Building' . . . *does not necessarily mean a structure so far completed as to be in all respects fit for the purpose for which it was intended.* It doubtless does mean an edifice or structure erected upon land, and so far completed that it may be used temporarily or permanently for the occupation or shelter of man or beast, or for the storage of tools or other personal property for safe-keeping." (Emphasis added.) 69 Wis. at 210-11.

The most recent entry in the "incomplete structure" jurisprudence appears to be *Smith v. State*, 226 Ga. App. 9, 485 S.E.2d

572 (1997). There, the Georgia Court of Appeals ruled that a house under construction without a garage door and a door from the garage to the house was sufficiently complete to be a building under Georgia's burglary statute. That statute provided in pertinent part that a " 'person commits the offense of burglary when . . . he enters or remains within the dwelling house of another . . . *or . . . any other building.*' " (Emphasis added.) The *Smith* court specifically held that a " 'building' under the burglary statute includes a house under construction which is so far completed as to be capable of providing shelter to people, animals, or property, such as the house in this case." 226 Ga. App. 9. Among other things, the court cited *Clark*, 69 Wis. 203; *People v. Angel*, 178 App. Div. 2d 419, 577 N.Y.S.2d 116 (1991), *appeal denied* 79 N.Y.2d 852 (1992); and *People v. Gillespie*, 344 Ill. 290, 176 N.E. 316 (1931), *reh. denied* June 5, 1931.

The *Smith* court also based its holding upon two additional reasons which are relevant to our analysis. First, both that court, and the Court of Appeals in the instant case, looked at the word placement in their state's burglary statutes. The *Smith* court noted: "[I]t appears that the legislature, by placing the word 'any' before 'building,' intended that the statute include buildings of whatever kind." 226 Ga. App. at 11. As previously mentioned, our Court of Appeals similarly observed: "We note also that the legislature included the word 'any' before the term building. Significantly, this suggests that it intended that all types of buildings be included under the statute. K.S.A. 21-3715." 37 Kan. App. 2d at 558.

Second, the *Smith* court found support in related Georgia case law. "Furthermore, we note that this Court has affirmed burglary convictions where the house burglarized was under construction, although the specific issue of whether an unfinished house is a 'building' within the meaning of the burglary statute was not raised." 226 Ga. App. at 11. Similarly, our Court of Appeals held in *Alvis*, 30 Kan. App. 2d 889, that a house under construction was not a "dwelling" and therefore defendant's criminal history score required redetermination. It remanded for classifying defendant's burglary conviction as a nonperson felony, *i.e.*, of a nondwelling,

but nevertheless a "building" which can be burglarized. 30 Kan. App. 2d at 892.

Chronologically between *Clark* in 1887 and *Smith* in 1997 are *Angel* in 1991, and *Gillespie* in 1931. In *Angel*, 178 A.D.2d 419, the court held that a house under construction that still required installation of the windows and skylight and completion of certain interior work was a "building" under New York's statute. The burglary and criminal trespass statutory definitions provided that " '[b]uilding,' in addition to its ordinary meaning, includes any structure . . . used for overnight lodging of persons, or used by persons for carrying on business therein." See Penal Law § 140.00(2).

In *Gillespie*, the Illinois court held that a tool shed under construction, without windows, doors, and parts of two walls "comes within the language 'other buildings,' as used in the statute defining burglary." 344 Ill. at 294. The court noted that a "building" under the statute had "been defined as fabric, structure, or edifice, such as a house, church, shop, or the like, designed for the habitation of men or animals or for the shelter of property; a structure. 9 Corpus Juris, 684; *Clark v. State*, 69 Wis. 203, 33 N.W. 436; 2 Am. St. Rep. 732." 344 Ill. at 294.

Ultimately, the majority of the Court of Appeals panel in the instant case concluded that the unfinished medical center constituted a building under K.S.A. 21-3715(b) and sufficient evidence existed to support Storey's conviction. 37 Kan. App. 2d at 561.

Judge Pierron dissented from the majority's holding. Per Storey's argument, he found *Alvis'* rationale to be controlling, arguing that "basic habitability" of the incomplete structure was the key issue. The majority of the panel, however, found *Alvis* distinguishable. We agree with the majority.

In *Alvis,* the defendant argued that his two prior convictions for burglary and attempted burglary should have been classified as nonperson felonies because the houses involved were still under construction and "not yet suitable for human habitation." 30 Kan. App. 2d at 890. The court agreed on the burglary conviction, stating that it could not conclude from the inadequate record whether the house was "capable of human habitation" to purportedly qualify as

a dwelling under K.S.A. 21-3110(7) and in turn to support a burglary conviction under subsection (a). 30 Kan. App. 2d at 892.

The *Alvis* court therefore held that the trial court erred in classifying Alvis' burglary conviction as a person felony, *i.e.*, involving a dwelling. It ordered that "[o]n remand, the trial court must classify the burglary conviction as a nonperson felony," *i.e.*, involving a building that was not a dwelling, "for the purpose of redetermining Alvis' criminal history score. See K.S.A. 21-3715(b)." 30 Kan. App. 2d at 892. The Court of Appeals in the instant case accurately pointed out that *Alvis* did not expressly determine that the house was a "building" under the burglary statute. 37 Kan. App. 2d at 560. Given the mandatory language in its remand— the trial court *"must classify* the burglary conviction as a nonperson felony"—it appeared to simply assume so. (Emphasis added.) If this result is supportive of any party's position, it appears to be the State's, not Storey's.

Finally, Storey's third cited case, *State v. Vinyard*, 32 Kan. App. 2d 39, was not addressed by the Court of Appeals' majority or dissent. He cites *Vinyard* solely to argue that the Court of Appeals "has applied the principle that a structure must present some security barrier in order for unlawful entry to constitute burglary." The *Vinyard* court determined that Vinyard's leaving the common area of a shopping mall to enter a Dillard's department store within the greater mall structure during business hours constituted "entering a building" under the aggravated burglary statute, K.S.A. 21-3716.

The State responds that reliance on *Vinyard* is misplaced because the medical center was not within a greater structure but rather a freestanding unit. We agree. Moreover, Dillard's was a completed structure; unlike *Moler*, there was no specific reference to "barrier to entry." There was in fact no physical barrier to all entries: Dillard's interior simply opens into the mall's common area. If this aspect of *Vinyard* is supportive of any party's position, it appears to be the State's, *i.e.*, a structure without a door is nevertheless a building for burglary purposes.

We agree with the holding of the panel majority. A plain reading of our statute, combined with the weight of other authorities cited,

leads to the conclusion that the unfinished medical center that Storey entered and from which he stole a saw constituted a "building" under K.S.A. 21-3715(b).

Issue 2: *The district court did not violate the Sixth and Fourteenth Amendments by imposing an enhanced sentence based upon prior convictions, without requiring that they be proven to a jury beyond a reasonable doubt.*

Storey contends that the use of his prior criminal history, without being included in the complaint, presented to the jury, and proven beyond a reasonable doubt, increased the maximum possible penalty for his conviction in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

The constitutionality of the Kansas Sentencing Guidelines Act (KSGA) is a question of law over which this court exercises unlimited review. *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002). This court has previously rejected the same challenge, which Storey acknowledges. See *Ivory*, 273 Kan. at 46-48 (holding that *Apprendi* does not apply to a sentence increased based on a criminal history score; including prior criminal convictions in KSGA criminal history score is constitutional); *State v. Lackey*, 280 Kan. 190, 120 P.3d 332 (2005), *cert. denied* 547 U.S. 1056. We have been provided no persuasive reason to retreat from that position now.

Storey's burglary conviction and the sentence imposed by the district court, and the decision of the Court of Appeals affirming the conviction and sentence, are affirmed.

JOHNSON, J., dissenting: I respectfully dissent from the majority's holding that an unfinished building in which the doors and windows have yet to be installed is nevertheless, as a matter of law, a "building" for purposes of the crime of burglary, under K.S.A. 21-3715(b).

First, I would not rely on the decisions from other states which construe their own peculiar statutes and prior case law, in light of our own prior decision in *State v. Moler*, 269 Kan. 362, 2 P.3d 773 (2000), construing the Kansas burglary statute. I perceive that *Moler* construed our statute to focus on the level of security against theft which a structure provides in determining whether it is sus-

ceptible to a burglary. However, if one were to apply the reasoning from the foreign opinions quoted by the majority and were to adopt the majority's reliance on our statute's use of the term "any" building, one might arguably reach a different result than did *Moler* with respect to a three-sided shed. Therefore, without overruling the holding in *Moler* and analyzing the current case with a clean slate, I would find the decisions from other states to be unpersuasive.

The majority cites to the Court of Appeals' attempt to distinguish *Moler* whereby that court found a compelling difference between interpreting what is an "other structure" versus interpreting what is a "building" as those terms are used in the burglary statute. However, as the majority notes, *Moler* was referring to *all of the enumerated items* in the burglary statute, which would include a "building," when it declared that the listed items were "intended to present a barrier to entry, which in turn provide an enclosed space for the security of persons or property which may be contained therein." 269 Kan. at 369. Therefore, I find the Court of Appeals' attempt to distinguish *Moler* to be ineffectual.

The majority in our opinion relies on the distinction that the three-sided shed in *Moler* was complete and would never be capable of providing security for persons or property, whereas the unfinished medical center building in this case was designed for and was intended to be capable of providing such security when completed. However, at the time of the theft, the unfinished structure did not present a barrier to entry or provide security for the property contained therein. That point may be best illustrated by the fact that the band saw's owner apparently deemed it prudent to keep the property in a locked box, rather than to rely on the "security" of the structure.

Carried to the extreme, the majority's designed or intended use touchstone could mean that the pouring of a concrete floor would be sufficient to make all property left on top of that floor amenable to a burglary, so long as the building, when completed, will in the future allow for the securing of property. I do not believe that to be the intent of the burglary statute or the spirit of the reasoning in *Moler*. Rather, I would suggest that a structure under construc-

tion must have progressed to the point where it is objectively reasonable for a property owner to believe that the structure will provide security for any property left on the premises. In that vein, I would submit that a rational person would not expect a floor, four walls, and a roof, without doors or windows having been installed, to provide any reasonable security against the theft of property contained therein.

Additionally, I disagree with the Court of Appeals' statutory interpretation. Specifically, I perceive that it fails to grasp the significance of K.S.A. 21-3110(7), defining a dwelling as "a building or portion thereof, a tent, a vehicle or *other enclosed space.*" (Emphasis added.) The operative word in that definition is "other," which connotes that all the items listed prior to the phrase "or other enclosed space" are deemed to be enclosed spaces. The Court of Appeals disregarded that definition because we are not dealing with a dwelling in this case.

However, the point is that the legislature obviously considered the term "building" to mean an enclosed space for purposes of K.S.A. 21-3715(a). The language of K.S.A. 21-3715(b) is identical to subsection (a), except that "is a dwelling" is replaced with "is not a dwelling." To say that the legislature intended the meaning of "building" to be different in these two nearly identically worded sections of the same statute strikes me as contrived, counterintuitive, and contrary to our well-founded maxim that criminal statutes are to be construed in favor of the person against whom they are being applied. See *State v. Snow*, 282 Kan. 323, 340, 144 P.3d 729 (2006) (criminal statutes must be strictly construed in favor of the accused with any reasonable doubt as to the meaning of the statute decided in favor of the accused). Thus, I would find that the term "building" means an enclosed space for purposes of the burglary of a nondwelling, as well as a dwelling.